# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KEVIN AJENIFUJA, ) | |
| ) | |
|    Plaintiff ) | |
| ) | |
| vs. ) | Case No. 1:19-cv-02323 |
| ) | |
| ALIKO DANGOTE ) | Judge: Dabney L. Friedrich |
| OSCAR ONYEMA ) | |
| NIGERIAN STOCK EXCHANGE ) | FIRST AMENDED VERIFIED |
| WORLD BANK GROUP ) | COMPLAINT AND JURY |
| ) | DEMAND |
|    Defendants ) | |
| ------------------------------------------------) | |

Plaintiff, Kevin Ajenifuja, (hereinafter "Plaintiff") files this First Amended Verified Complaint and alleges as follows:

## NATURE OF THE ACTION

1.    This is a civil action for legal and equitable relief for misappropriation of trade secrets, intentional interference with economic relations, conspiracy to violate rights, and intentional infliction of emotional destress.

## PARTIES

2.    Plaintiff is an individual with primary residence at 5226 Klingle Street N.W., Washington, DC 20016.

3.    On information and belief, Aliko Dangote (hereinafter "Dangote") is an individual and a citizen of Nigeria. On information and belief, Defendant Dangote primary residence is in Lagos, Nigeria; and he maintains an office at 1 Alfred Rewane Road, PMB 40032, Falomo Ikoyi, Lagos, Nigeria.

FIRST AMENDED VERIFIED COMPLAINT

RECEIVED

NOV 2 5 2019

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

4.      On information and belief, Oscar Onyema (hereinafter "Onyema") is an individual and a citizen of Nigeria. On information and belief, Defendant Onyema has a residence visa for the United States of America. On information and belief, Defendant Onyema maintains a mailing address of 401 East 34th Street, Apartment South 34C, New York, NY 10016. On information and belief, Defendant Onyema is the Chief Executive Officer of the Nigerian Stock Exchange in Lagos, Nigeria.

5.      On information and belief, the Nigerian Stock Exchange (hereinafter "NSE") is a corporation organized and existing under the laws of the Federal Republic of Nigeria, having its principal and registered place of business at 2-4 Custom Street, Lagos Island, Lagos, Nigeria.

6.      On information and belief, the World Bank Group (hereinafter "WBG") is an international organization organized and existing under the Bretton Woods Treaty, having its principal and registered place of business at 1818 H Street NW, Washington, DC 20433.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. § 1836(c), and 28 U.S.C. § 1331(a) as to Plaintiff's trade secret claims. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this civil action occurred in this district. The Defendants misappropriated trade secrets and performed other tortious and wrongful acts in and impacting this district, and are subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

9.      Plaintiff was born and raised in Lagos, Nigeria. Plaintiff graduated from the

University of Lagos, Nigeria with a Bachelor of Science degree in Economics in June 1987. Plaintiff moved to the United Stated on November 14, 1987. Plaintiff subsequently received his Master of Business Administration (MBA) degree in Finance from Rutgers University in Newark, New Jersey in May 1992. After business school, Plaintiff worked as finance manager and senior finance executive for multinational and startup companies in New Jersey, New York, Washington, DC; Madrid, Spain; and Saumur, France.

10.     Plaintiff became a naturized citizen of the United States in 1995.

11.     On November 19, 1994, Plaintiff and Anita Koepcke met in New Brunswick, New Jersey and began dating thereafter. Anita Koepcke was born and raised in Germany. She was in United States on a cultural exchange program when she met Plaintiff.

12.     On or about September 15, 1999, Plaintiff and Anita Koepcke purchased and moved into an apartment in Hoboken, New Jersey. On November 27, 2000, Plaintiff married Anita Koepcke in a civil ceremony in Jersey City, New Jersey. This was followed by a church ceremony on September 6, 2003. Plaintiff and Anita Koepcke divorced on August 4, 2017.

13.     On or about March 2000, Plaintiff was introduced to Defendant Onyema by Bola Adeeko. Defendant Onyema and Bola Adeeko later purchased and moved into their individual apartments in Hoboken, New Jersey.

14.     On or about March 2003, Plaintiff incorporated Ajenifuja Investments, LLC; an equity investment company, in Delaware. Plaintiff started working full-time from his home office and managing money for few friends.

15.     On or about May 2003, Defendant Onyema, Bola Adeeko, and Tinuade Awe, among others, invested money in Ajenifuja Investments' Aggressive Growth fund, and/or Triple Q fund. Defendant Onyema and Tinuade Awe knew each other from the University of Ife, Oyo, Nigeria. All three individuals liquidated their investment accounts in August 2004. Similarly,

Defendant Onyema, Tinuade Awe and Bola Adeeko are currently employed by Defendant NSE.

16.     On or about June 2004, Plaintiff and Anita Koepcke moved to Washington, DC. Plaintiff continued to research its financial instrument offerings while providing consulting services on the side to pay living expenses. After over ten years of research and development, Plaintiff developed the technique and process of a sector exchange-traded funds for Africa.

17.     On information and belief, Tinuade Awe started providing legal consulting services for Defendant NSE in 2009. On information and belief, Ms. Awe became a full-time employee of Defendant NSE in August 2010. On information and belief, Defendant Dangote was the First Vice President of Defendant NSE in early 2009.

18.     On July 19, 2009, The Vanguard, a major Nigerian newspaper, reported: "[t]here are indications that Alhaji Aliko Dangote [Defendant Dangote] may have bowed to pressure following controversy trailing his alleged involvement in the manipulation of the share price of African Petroleum (AP) Plc. as he stepped down as the first vice President of the Nigerian Stock Exchange (NSE). Dangote was to take over as President of the NSE at the expiration of the tenure of the incumbent, Mr. Oba Odudeko."

19.     On or about August 3, 2009, Defendant Dangote was elected the 17th president [Chairman of the Board] of the Nigerian Stock Exchange. Defendant Dangote's election was put on hold the following day by the High Court in Lagos, Nigeria.

20.     On August 17, 2009, Anita Koepcke stated working as General Attorney for the United States Department of Veterans Affairs in Washington, DC. On information and belief, Anita Koepcke is still employed by the United States Department of Veteran as of the filing of this complaint

21.     On or about August 24, 2009, Plaintiff and Anita Koepcke's first child started pre-school at the German School Washington. This child was assigned to Mmes. Martina Voss and

Tunde Long's Seahorse class.

22.     On February 8, 2010,  a twenty-two weeks pregnant Anita Koepcke was invited by employees of Defendant WBG to join the German Society. According to Anita Koepcke's calendar, she had an appointment on February 8, 2010 at 7:30pm with "Nelson Mandela at 6330 Linway Terrace, McLean, Virginia." On information and belief, Anita Koepcke was actually at *Deutschsprachige Katholishche Gemeinde Washington, DC* [German-speaking Catholic Mission Washington, DC] - 6330 Linway Terrace, McLean, Virginia. On information and belief, a pregnant Anita Koepcke was given illicit drugs at the meeting. Anita Koepcke was later provided opioid medications on a regular basis because her system did not respond well to the initial illicit drugs. On information and belief, Anita Koepcke became addicted to opioids.

On information and belief, Anita Koepcke was subsequently blackmailed into monthly extramarital sex with younger guys at 1830 Opalocka Drive, McLean, Virginia. Anita Koepcke made several attempts to inform Plaintiff about these activities. For instance, Anita Koepcke sent Plaintiff a hyperlink to the explicit section of DC Urban Moms website, where erect penis pictures were displayed. On information and belief, Anita Koepcke's addiction to opioids and her extramarital sex were used to control and psychologically manipulate her. On information and belief, Anita Koepcke was trained and instructed to gradually disrupt Plaintiff's life, career and children.

23.     On or about March 12, 2010, Defendant Dangote's election as the president of the Nigerian Stock Exchange was nullified by Federal High Court in Lagos, Nigeria following the application made to the court by some shareholders of African Petroleum Plc (now Forte Oil Plc), who had sued Defendant Dangote, Nova Finance and Securities Ltd., Defendant NSE and others, over alleged manipulation of African Petroleum share price.

24.     On March 31, 2010, Plaintiff started working as the Chief Financial Officer (CFO)

for the Municipal Securities Rulemaking Board (MSRB) in Alexandria, Virginia. Plaintiff reported to Lynnette Kelly, MSRB's Chief Executive Officer. Plaintiff was recruited for this position by Joyce Golden of SPG & Associates.

25.     On June 2, 2010, Plaintiff and Anita Koepcke's third child was born at Sibley Memorial hospital in Washington, DC.

26.     On June 16, 2010, Mrs. Ndi Okereke-Onyiuke, Managing Director of Defendant NSE notified the Board of NSE of her voluntary retirement, effective December 15, 2010.

27.     On July 15, 2010, Plaintiff's CFO contract with MSRB was abruptly terminated. Plaintiff could not find another stable job until January 17, 2012. About a week before Plaintiff's CFO contract was terminated, Plaintiff received a LinkedIn alert from Lisa Sanford, an associate of SPG & Associates. Upon reviewing this alert, Plaintiff discovered that his CFO position was advertised on LinkedIn Job Board.

28.     Following allegations of financial impropriety, Ms. Arunma Oteh (Managing Director of Securities and Exchange Commission of Nigeria) fired Mrs. Ndi Okereke-Onyiuke, Managing Director of Defendant NSE. "Most market analysts at the time pinned Okereke-Onyiuke's dismissal to the fallout of the altercation and supremacy battle between her [Ndi] and Africa's foremost business mogul and richest man [Defendant Dangote]."

29.     On September 7, 2010, Dr. Monique Vledder, an employee of Defendant WBG enrolled her one-year old daughter at the Little Graces Playgroup. The Playgroup was in the basement of St. David's Episcopal church, across the street from Plaintiff and Anita Koepcke's house. According to Dr. Monique Vledder's World Bank bio, "she's an expertise in maternal and child health." Plaintiff and Anita Koepcke's one-year old daughter was also enrolled at the Little Graces Playgroup. Plaintiff and Anita Koepcke's nanny took their one-year old daughter and newly born son to the Playground three times a week. Shortly after Plaintiff's kids started going

to the Playgroup, Dr. Monique Vledder and Anita Koepcke became friends. On information and belief, Dr. Vledder was sent to the Playground to provide off-the-record medical supervision of Plaintiff and Anita Koepcke's son.

30.     On or about September 2010, Defendant Onyema asked Plaintiff if he was interested in applying for the Chief Executive Officer (CEO) position at the Nigerian Stock Exchange. Defendant Onyema told Plaintiff that he was on the selection committee for the new CEO. Plaintiff did not respond to Defendant Onyema's fishing expedition.

31.     On December 17, 2010, Plaintiff and his family drove New York City for the weekend. Plaintiff started noticing changes in Anita Koepcke's behavior and demeanor. Anita Koepcke was agitated and irritated at the Christmas Spectacular show at Radio City Music Hall.

32.     On or about March 26, 2011, Anita Koepcke asked Plaintiff to go camping with Derry Deringer and his kids. Derry Deringer's wife, Dina-Maria Deringer, was an employee of Defendant WBG. Plaintiff and his two daughters drove to the Shenandoah River State Park area to camp for the night. Around the same time, Derry Deringer started inviting Plaintiff to Asian massage parlor in Virginia. Derry Deringer suggested to Plaintiff that they could have massages, watch football games, and have happy ending at the Asian massage parlor. Plaintiff declined the massage parlor invitation each time. Plaintiff however went to several bars, music venues, and restaurants with Derry Deringer.

33.     On July 4, 2011, Plaintiff and his family went to the Palisades 4th of July Parade. While Plaintiff and his family were standing on the lawn next to 5315 Edmunds Place NW, Plaintiff saw Suzanne Lindlbauer, her husband Wolfgang and daughter Lena. Plaintiff also saw a slim blonde German diplomat lady and her daughter with the Lindlbauers about fifteen yards away. Plaintiff saw the German diplomat lady drove her white Mercedes-Benz C-class with diplomatic license plate pass his house towards Suzanne Lindlbauer's house the morning of the

parade.

34.     On July 29, 2011, Elena Braunschweig, Plaintiff and Anita Koepcke's German *Au Pair* arrived at their house in Washington, DC.

35.     On or about August 18, 2011, Klaus & Tatiane Hofstadter, Daria Nashat & Bart Vermeulen, Robin Brooks & Maya MacGuineas, and Konrad & Verena Braunoehler enrolled their kids at the German School Washington. Klaus Hofstadter was the Commercial Attaché for the Austrian Embassy in Washington, DC. Konrad Braunoehler was a Senior Legal Counsel for Defendant WBG, and Robin Brooks was the Foreign Exchange Chief Economics for the Goldman Sachs in New York City.

36.     On or about August 25, 2011, Plaintiff, Anita Koepcke and their three children went to the German School Washington to for the Kindergarten family meeting. While at the school, Anita Koepcke specifically pointed out to Plaintiff that there was a mixed family in their daughter's kindergarten class. Around 8:00pm, Plaintiff carried their sleeping son to their SUV. While Plaintiff was standing next to his car in the school parking lot, Plaintiff noticed that the mixed family (Klaus Hofstadler, his Afro-Brazilian wife and two kids) was right next to him. Mr. Hofstadler's red SUV with diplomatic license plate was parked next to Plaintiff's SUV.

37.     On or about December 21, 2011, Plaintiff started receiving Ziggs Real-Time Search Alerts. The alerts were meant to keep Plaintiff informed each time an internet searcher view Plaintiff online profile.

38.     On or about January 16, 2012, with the assistance of Anita Koepcke, Plaintiff was able to secure a stable job as Financial Controller of JPA Health Communications in Washington, DC.

39.     On January 25, 2012, Plaintiff received a Ziggs real-time alert that an internet searcher viewed his online profile in Lagos, Nigeria. This alert was among the several alerts that

Plaintiff received between December 21, 2011, and July 31, 2013.

40.     On or about February 21, 2012, Defendant Onyema came to Washington, DC for a conference at the Marriot Wardman Park hotel. Defendant Onyema called Plaintiff to say hello and asked for a dinner meeting. Around 7:00pm, Plaintiff picked Defendant Onyema from his hotel and took him to Bodega restaurant in Georgetown for dinner. During dinner, Defendant Onyema mentioned to Plaintiff that he bought a house in Ikoyi, Lagos, knocked it down and was building a new house. Defendant Onyema also told Plaintiff that he was dating Miss Ghana. At that point, Plaintiff said, "you need to be careful because you probably have an FBI file by now." Defendant Onyema then replied, "I don't do random girls." Towards the end of dinner, Defendant Onyema suggested to Plaintiff that he should develop some financial instruments for trading on the Nigerian Stock Exchange. Plaintiff did not respond to Defendant Onyema's suggestion.

41.     On March 10, 2012, Elena Braunschweig drove Plaintiff's car to Bethesda, Maryland to visit her friend. Ms. Braunschweig got back home around 8:00pm and parked the car in front of Plaintiff's house. The car was parked on a quiet and empty street. When Plaintiff went outside around 10:00pm to give Ms. Braunschweig a ride, they discovered that someone had crashed into the whole driver side of Plaintiff's car. Ms. Braunschweig at that point told Plaintiff that she heard a loud noise about five minutes after she came back from Bethesda, Maryland. The car damaged cost about $2,500 to repair. On information and belief, the car crash was a deliberate act to distract Plaintiff from finding out about Anita Koepcke's opioid addiction.

42.     On or about June 18, 2012, the Court of Appeal in Lagos, Nigeria reversed the Order nullifying the election of Defendant Dangote as the President of the Nigerian Stock Exchange.

43.     On June 19, 2012, Defendant Dangote took over as the President of the Nigerian Stock Exchange following the ruling of the Court of Appeal in Lagos, Nigeria upholding his three

appeals against cases that led to the nullification of his election as president of the exchange.

44.      On July 27, 2012, Elena Braunschweig completed her *au pair* year and left for a two-week vacation. Around 6:00pm, Mirjam Schatzmann, an Austrian *Au Pair*, arrived at Plaintiff and Anita Koepcke's home.

45.      On August 27, 2012, Plaintiff and Anita Koepcke's oldest daughter started first grade at the German School Washington. Plaintiff's daughter was assigned to Mrs. Ute Aminzadeh in first and second grade. Unlike pre-school through kindergarten, Anita Koepcke discouraged Plaintiff from attending parent-teacher conferences while their daughter was in first grade. Anita Koepcke told Plaintiff that Mrs. Ute Aminzadeh preferred to speak in German and since Plaintiff did not speak German, it would be pointless. Anita Koepcke also discouraged Plaintiff from teaching their daughter English sight words because it would mess-up the German School teaching system, she said. When Plaintiff asked Anita Koepcke about German sight words, she told Plaintiff there were no sight words in German language.

46.      On September 6, 2012, Plaintiff contacted Adedoyin Afun, his nephew, who was an attorney in Lagos, Nigeria. Plaintiff asked Mr. Afun for an introduction to a good securities attorney in Lagos, Nigeria. Mr. Afun recommended his law firm as a top financial and securities firm.

47.      On September 21, 2012, Plaintiff and Anita Koepcke received a dinner party invitation from Klaus & Tatiane Hofstadler. Rhea & Darren DeStefano, Anja Robakowski & Kenneth Vanstralen, Daria Nashat & Bart Vermeulen, Dina-Maria & Derry Deringer, Marice & Benjamin Perlman were also invited. Anja Robakowski and Dina-Maria Deringer were employees of the Defendant WBG.

48.      On September 29, 2012, Plaintiff and Anita Koepcke attended the dinner party at the Georgetown home of Klaus & Tatiane Hofstadler. Plaintiff met the invited guests for the first

time, except the hosts, Dina-Maria & Derry Deringer, and Darian Nashat & Bart Vermeulen.

49.     On or about November 2, 2012, Robert Powell, Plaintiff's neighbor, started taking 7:20am metro D5 bus (Sangamore Road – Farragut North) with Plaintiff on Friday. Mr. Powell took that same bus about four times on Friday with Plaintiff. On information and belief, Mr. Powell was an employee of Defendant WBG.

50.     On November 12, 2012, Plaintiff received a Ziggs Search Engine Alert that someone in Washington, DC searched his online profile through bing.com. On the same day, Olufemi Adegbesan called Plaintiff to inquire if it was okay for him and his family to visit Plaintiff's family for Thanksgiving.   On information and belief, Olufemi Adegbesan was the individual that searched Plaintiff online profile because of the search engine used to conduct the search. Plaintiff and Olufemi Adegbesan met in 1988 while attending Bryant College in Smithfield, Rhode Island.

51.     On November 22, 2012, Olufemi Adegbesan, his wife, two sons and niece came to Plaintiff and Anita Koepcke's house for Thanksgiving dinner. On information and belief, Olufemi Adegbesan was sent to Plaintiff's house on a fishing expedition.

52.     On December 15, 2012, Plaintiff and Anita Koepcke went to JPA Health Communications' Christmas party at Carrie & David Jones' house in McLean, Virginia. Plaintiff and Anita Koepcke saw David Jones chatting with a mid-40s lady in the kitchen. Anita Koepcke sarcastically mentioned that they were having an affair. Plaintiff though it was weird for Anita Koepcke to reach that conclusion based on normal two-person conversation.

53.     On January 1, 2013, Mirjam Schatzmann informed Plaintiff and Anita Koepcke that her English basement room was flooded because of sewage line backup. Plaintiff found out from Roto-Rooter plumbing company that the sewage line backup was caused by tampons. Ms. Schatzmann denied flushing tampons down the drain, but Anita Koepcke blamed her for the

mishap. On information and belief, the sewage line backup was a deliberate act to distract Plaintiff from finding out about Anita Koepcke's opioid addiction.

54.      On January 18, 2013, Chiji Uzo, an old Nigerian friend from Rutgers Business School called Plaintiff to ask for venture capital recommendation for his startup company. Plaintiff referred Mr. Uzo to Dominic Onyema and Richard Erickson. On information and belief, Mr. Uzo disguised as a friend in need of assistance to find out the venture capital firms Plaintiff was working with to finance his business plan.

55.      February 6, 2013, Klaus Hofstadler invited Plaintiff and Anita Koepcke to a live Jazz music concert at the Blues Alley in Georgetown. Mr. Hofstadler purchased four tickets to the February 16th "Iceman Butler" show for $200.

56.      On February 13, 2013, Plaintiff received another Ziggs Real-Time Search Alert that someone in Senegal searched his online profile. On information and belief, Safiu O. Olaniyan, head of chancery at the Nigerian Embassy in Madrid, Spain, searched Plaintiff's online profile while attending the United Nations African Institute for Economic Development and Planning in Dakar, Senegal.

57.      On February 16, 2013, Anita Koepcke started an unnecessary argument with Plaintiff and decided not to attend the Jazz concert. Plaintiff went to the concert with Klaus & Tatiane Hofstadler. While walking back to Klaus & Tatiane Hofstadler's house, Mr. Hofstadler invited Plaintiff for a drink at Martin's Tavern. Plaintiff and Mr. Hofstadler went to Martin's Tavern while Mrs. Hofstadler walked home by herself. Plaintiff noticed that Martin's Tavern was parked full of young college girls. On information and belief, this was an attempt to entice Plaintiff to have an affair.

58.      On March 1, 2013, Plaintiff resigned from JPA Health Communications effective March 15th. Starting around January 2013, Plaintiff relationship with Carrie Jones, the owner of

JPA Health Communications, deteriorated drastically. Judy Carson, Mrs. Jones' aunt, verbally assaulted Plaintiff on several occasions in February 2013.

59.     On April 5, 2013, Mirjam Schatzmann's parents flew in from Austria to visit her. They stayed at Plaintiff and Anita Koepcke's house for few days. On the same day, Mirjam Schatzmann wrote in her Journal, "Unfortunately, lay [sex] with Kevin was pretty much on my mind. He and I were pretty down a few times."

60.     On April 7, 2013, Mirjam Schatzmann and her parents left Plaintiff and Anita Koepcke's home for a week vacation.

61.     On April 8, 2013, Anita Koepcke went into Mirjam Schatzmann's room and came out with her Journal. The Journal was written in German and Anita Koepcke translated portion of it to Plaintiff. According to Anita Koepcke's translation of the Journal, Ms. Schatzmann talked about her psychological disorders and Plaintiff. Plaintiff then pointed out to Anita Koepcke that the comments about him were written with a different pen color compared to comments before and after that comments. On information and belief, this was an attempt to defame Plaintiff.

62.     On April 25, 2013, Dominic Onyema forwarded an email invitation to his Bachelor party to Plaintiff. The original email invitation was sent out by Defendant Onyema. The Bachelor party was scheduled for the Memorial Day weekend – May 23rd – 26th. On the same day, Plaintiff received a "Save the Date!" email from Dina Mocan, Dominic Onyema's fiancée.

63.     On April 29, 2013, Plaintiff and Anita Koepcke stopped Mirjam Schatzmann from driving their children due to her Ms. Schatzmann's psychological disorders. This decision was based solely on Anita Koepcke's translation of Ms. Schatzmann's Journal. Plaintiff started driving their kids to the German School in the morning and picking up most afternoon. Anita Koepcke wanted to fire Ms. Schatzmann, but Plaintiff convinced her not to because Ms. Schatzmann had about three months left on her contract.

64.     On July 19, 2013, Mirjam Schatzmann completed her au pair year and moved out of Plaintiff and Anita Koepcke's house. Ms. Schatzmann moved into HI Washington DC Hostel for about a week.

65.     On August 9, 2013, Sophie Krancan, Plaintiff and Anita Koepcke's new Austrian *Au Pair* arrived at their home.

66.     On or about August 12, 2013, Anita Koepcke started communicating with Google Voice number 240-424-2338. The Google Voice number belonged to Norma & Rubelio Rodriguez. Norma Rodriguez is related to Stephanie Rodriguez, an associate at the law firm of Covington & Burling, LLP since 2012. Daniel Matro was also an associate at Covington & Burling, LLP from July 2012 to December 2015. Daniel Matro was married to Katharina Matro. Daniel & Katharina Matro had a child in Plaintiff and Anita Koepcke's daughter class at the German School Washington.

67.     On August 24, 2013, Plaintiff and Anita Koepcke drove to New York City to attend Dominic Onyema and Dina Mocan's wedding. Plaintiff met Defendant Onyema and Bola Adeeko at the wedding ceremony. Plaintiff also met Stephen Agunbiade at the wedding reception. Plaintiff and Stephen Agunbiade have been friends since 1984. Around 11:30pm, Mr. Agunbiade came to Plaintiff and invited him to the after-wedding party at the W Hotel on Lexington Avenue, New York.

68.     On or about August 26, 2013, Anita Koepcke and Daria Nashat decided to be German School class representatives for classroom 2B. Anita Koepcke and Ms. Nashat's daughters were in second grade class 2B.

69.     On September 14, 2013, Anita Koepcke complained to Plaintiff that Sophie Krancan had damaged their car tire from speeding. Anita Koepcke instructed Plaintiff to fire Ms. Krancan because she was not forthright about what had happened to the car.

70.     On September 15, 2013, Plaintiff sat down with Sophie Krancan and told her they needed to let her go because her driving skills were not up to Plaintiff and Anita Koepcke's standard.

71.     On September 16, 2013, Sophie Krancan moved out of Plaintiff and Anita Koepcke's house. Ms. Krancan moved in with Hilda Gore. Ms. Gore was the music director at Plaintiff and Anita Koepcke's church.

72.     On October 11, 2013, Anita Koepcke left her home at 7:50pm and sent a text message to Anja Robakowski at 8:01pm. Anita Koepcke was near Fletcher's Cove – 4940 Canal Road NW, from 9:44pm to 9:55pm. Anita Koepcke got back to her home at 10:21pm. On information and belief, Anja Robakowski met with Anita Koepcke to give her opioid medications. Ms. Robakowski's husband was a General & Cosmetic Dentist.

73.     On October 12, 2013, Anita Koepcke called Daria Nashat from her cellphone at 9:47am. On information and belief, Anita Koepcke left her home at 8:00pm. Anita Koepcke was at 1830 Opalocka Drive, McLean, Virginia from 8:35pm to 11:54pm. Anita Koepcke got back home on October 13, 2013 at 12:10am.

74.     On November 14, 2013, Plaintiff received a Google+ notification that Defendant Onyema, "Oscar Onyema added you back on Google+." Plaintiff didn't know that Defendant Onyema unfriended him on Google+.

75.     On November 22, 2013, a German *Au Pair* named Meike Hoffmann arrived at Plaintiff and Anita Koepcke's home.

76.     On November 26, 2013, Elise Hilliges sent text messages to Meike Hoffmann. Elise Hilliges was the German *Au Pair* for Wiebke Rueckert and Daniel Krebbe. Ms. Rueckert was a German diplomat at the German Embassy in Washington, DC and Mr. Krebbe was a German diplomat at the U.S. State Department.

77.     On November 27, 2013, Elise Hilliges sent a text message to Meike Hoffmann at 10:02am. Meike Hoffmann then exchanged text messages with Wiebke Knauer starting at 11:20am. Ms. Knauer was the German *Au Pair* for Daniel & Katharina Matro. At 9:02pm, Meike Hoffmann contacted Julie Schiffman. Ms. Schiffman was a therapist that used Emotional Freedom Techniques (EFT/Tapping) to combat drugs and emotional issues. Ms. Schiffman was based in Atlanta, Georgia. On information and belief, Meike Hoffmann was used as an intermediary to communicate with a drug therapist. On information and belief, Anita Koepcke continued her treatment with Ms. Schiffman for several weeks.

78.     On December 9, 2013, Meike Hoffmann started exchanging text messages with Dr. Michael Richard Petersen. Dr. Petersen worked for the Cincinnati Eye Institute in Cincinnati, Ohio. Dr. Petersen specialties included Ophthalmology, a branch of medicine and surgery that deals with the diagnosis and treatment of eye disorders.

79.     On December 19, 2013, Anita Koepcke exchanged text messages with Clemencia Torres de Maestle, Daria Nashat, and Anja Robakowski. Anita Koepcke later called Dr. Christian F. Tischer at 3:45pm. At 5:03pm, Anita Koepcke left home and drove to Dr. Tischer's house – 5913 Walton Road, Bethesda, Maryland. Dr. Tischer was a practicing Anesthesiologist in Frederick, Maryland. On information and belief, Anita Koepcke was at Dr. Tischer's house for opioid medications.

80.     On December 31, 2013, Meike Hoffmann showed Plaintiff a WhatsApp text message that she received from an Austrian phone number. The text message mentioned that Ms. Hoffmann's cellphone was being monitor. Plaintiff called T-Mobile and changed Ms. Hoffmann cellphone number from 202-413-0057 to 202-621-3137. On information and belief, the WhatsApp text message was a setup designed to stop Plaintiff from finding out that Ms. Hoffmann had been acting as an intermediary.

81.     On January 13, 2014, Anita Koepcke exchanged text message with Dr Lewei Allison Lin. Dr. Lin was an addition psychiatrist and Assistant Professor in the Department of Psychiatry as well as a research investigator at the Veterans Affairs Center for Clinical Management Research. Dr. Lin specialized in ways to improve treatment for patients with opioid and other substance use disorders.

82.     On January 18, 2014, Plaintiff hired Lindy Farrar, an American University senior, to tutor his 2nd grade daughter in English reading and comprehension. Plaintiff's daughter met with Ms. Farrar at Tenley library from 10:00am to 12:00pm on Saturdays. After three tutoring sessions, Ms. Farrar told Plaintiff that his 2nd grade daughter was getting her self-esteem back. On information and belief, Plaintiff and Anita Koepcke's daughter was psychologically demoralized at the German School Washington in 1st and 2nd grades.

83.     On January 20, 2014, Anita Koepcke left home at 3:07pm. Anita Koepcke was at 1830 Opalocka Drive, McLean, Virginia from 3:33pm to 6:56pm. Anita Koepcke got back home at 7:11pm. On information and belief, Meike Hoffmann started using Google Voice number 406-646-6449 on January 20th. Ms. Hoffmann replaced that number with Google Voice number 240-324-8223 on November 2, 2014, two weeks before she completed her au pair year with Plaintiff and Anita Koepcke. On information and belief, Ms. Hoffmann was instructed to use the Google Voice numbers to conceal her communications.

84.     On January 31, 2014, Meike Hoffmann started exchanging text messages with Dr. Toyin Ajayi. Dr. Ajayi was with the National Institutes of Health – National Heart, Lung, and Blood Institute in Bethesda, Maryland. The communication with Dr. Ajayi went on for few months.

85.     On February 10, 2014, Plaintiff and Anita Koepcke took their 2nd grade daughter to Key Elementary School for the District of Columbia Public School (DCPS) Comprehensive

Speech and Language Evaluation meeting.

86.     On March 25, 2014, Anita Koepcke took their 2nd grade daughter to Shaw Middle School for psychological evaluation.

87.     On April 16, 2014, Anita Koepcke started exchanging text messages with Defendant WBG issued cellphone number 202-569-0947. On information and belief, Anita Koepcke was communicating with Robert Powell through another employee of Defendant WBG.

88.     On or about May 11, 2014, Anita Koepcke went to the Wilson pool with two of their kids for swimming lessons. On information and belief, Anita Koepcke fainted while at the pool. District of Columbia Fire & EMS was called to revive and assist her. Anita Koepcke however told Plaintiff a different story when she got home.

89.     On May 13, 2014, Defendant Dangote resigned as the President of the Nigerian Stock Exchange, a year before the expiration of his 3-year term. Defendant Dangote officially stepped down at Defendant NSE annual general meeting on September 24, 2014. On information and belief, Defendant Dangote resigned to conceal his involvement in what happened to Plaintiff and Anita Koepcke.

90.     On May 24, 2014, Anita Koepcke left home at 9:24am. Anita Koepcke was at CVS Pharmacy – 5700 Bou Avenue, Rockville, Maryland from 10:16am to 10:57am. Anita Koepcke got back home at 12:17pm. On information and belief, Anita Koepcke went to CVS Pharmacy twenty miles from her home for opioid medications.

91.     On May 31, 2014, Plaintiff and Anita Koepcke left home at 6:36pm to attend Spring party at Maike Friedrichsen & Javier Marin's house. Ms. Friedrichsen was a German diplomat at the German Embassy in Washington, DC. Anita Koepcke exchanged text messages with Vanena Wilmot between 8:21pm and 8:35pm. Plaintiff and Anita Koepcke were together throughout the party, except when Anita Koepcke went into the powder room next to the kitchen.

On information and belief, Anita Koepcke received instructions via text messages that opioid medications were left for her in the powder room.

92.     On June 6, 2014, Anita Koepcke left home at 7:05am. Anita Koepcke was at Navy Criminal Investigative Service (NCIS) – 1411 Patterson Avenue SE, from 8:11am to 5:30pm. Anita Koepcke got back home at 6:34pm. On information and belief, Anita Koepcke completed her training on intelligence gathering, sharing, and criminal entrapment. Anita Koepcke later went to Pinstripe in Georgetown in the evening to celebrate her completed training.

93.     On July 4, 2014, Konrad & Verena Braunoehler's family came to Plaintiff and Anita Koepcke's house for BBQ and World Cup soccer game.

94.     On July 5, 2014, Meike Hoffmann flew alone to Miami Beach, Florida for a week vacation. Even though Plaintiff advised Meike Hoffmann not to travel to Miami Beach alone, she went anyway.

95.     On information and belief, Meike Hoffmann was provided an opportune moment to use illicit drugs on July 7, 2014, in Florida. Ms. Hoffmann was arrested, confined, and unreachable for two day. On information and belief, Ms. Hoffmann was put in this unfortunate situation to blackmail and silence her.

96.     On information and belief, Anita Koepcke was so concerned about what had happened to Meike Hoffmann in Florida that she called several individual to find out about Ms. Hoffmann status. On July 8, 2014, Anita Koepcke went to Wendt Center for Loss and Healing – 4201 Connecticut Avenue NW, to talk to a therapist.

97.     On July 12, 2014, Meike Hoffmann got back from her vacation in Miami Beach, Florida. Plaintiff started noticing parked cars with headlights on in front of his house the same day. Plaintiff also started noticing a white girl with long blonde hair running and stopping in front of his house. These events were so weird that Plaintiff once asked Ms. Hoffmann if the white girl

was her Australian *Au Pair* friend. These usual activities went on every evening between July 12th and August 2014.

98.     On July 16, 2014, Anita Koepcke left home for her Veterans Affairs office at 8:38am. Anita Koepcke and Drew Silow, her coworker, had lunch at the Rappahannock Oyster Bar. Anita Koepcke got back home at 5:49pm. Anita Koepcke and Meike Hoffmann left home together to see an outdoor movie at the George Washington University Mount Vernon campus between 7:59pm and 10:28pm.

99.     On July 17, 2014, Plaintiff's son woke him up around 6:00am because the kids' bathroom was flooded. Plaintiff discovered that the bathroom toilet tank cracked on the side and was leaking water. On information and belief, this was a deliberate act to distract Plaintiff from finding out what had happened Meike Hoffmann.

100.     On July 21, 2014, Plaintiff contacted his brother in Lagos, Nigeria to find out if there was any relation between his family and Adeolu Bajomo of Defendant NSE.

101.     On July 23, 2014, Anita Koepcke left home at 8:27am to drive to her Veterans Affairs office. Anita Koepcke stopped at Wiebke Rueckert's house -- 4610 Ashby Street NW. On information and belief, Anita Koepcke was provided information about Plaintiff contact with his family in Lagos, Nigeria.

102.     On July 31, 2014, while trying to understand what was happening around him, Plaintiff contacted Leslie Carey, an attorney friend from MSRB. Plaintiff and Ms. Carey scheduled a meeting for the following day at Starbucks in Georgetown.

103.     On August 1, 2014, Plaintiff met with Leslie Carey at 9:00am. Plaintiff was informed by Ms. Carey that he was being defamed all over Washington, DC. Plaintiff asked Ms. Carey who was behind it and why. Ms. Carey offered to find an attorney mediator to help put an end to the defamation. Anita Koepcke left home at 6:01pm. On information and belief, Anita

Koepcke was at Tenley Metro station at 6:21pm to meet with Laura Bernasconi. On information and belief, Anita Koepcke communicated with Defendant Onyema through Laura Bernasconi and Dele Awoniyi. Both Laura Bernasconi and Dele Awoniyi worked for the U.S. government in Washington, DC. Dele Awoniyi was a friend of Defendant Onyema.

104.    On August 2, 2014, Plaintiff received an email titled "US Visit" from Defendant Onyema. Defendant Onyema informed Plaintiff that, "I will be in DC from Sunday to Wednesday, and NYC from Thursday to Saturday."

105.    August 3, 2014, Anita Koepcke left her home at 10:37am. Anita Koepcke was as Eaton Elementary School in Washington, DC from 10:49am to 12:03pm. Anita Koepcke then exchanged  text messages with Defendant WBG issued phone number (202-569-0947) at 11:43am. Anita Koepcke got back home at 12:22pm. On information and belief, Defendants Dangote and Onyema arrived in Washington, DC on August 3, 2014 for the 2014 United States-Africa Leaders' Summit.

106.    On August 4, 2014, Anita Koepcke was contacted at 8:19am via text messages from Defendant WBG issued cellphone (202-569-0947). On information and belief, Anita Koepcke was instructed to deliver Plaintiff's trade secrets to someone at Columbia Heights Community Center – 1480 Girard Street NW, Washington, DC. On information and belief, Anita Koepcke drove to Columbia Heights Community Center and back home. Anita Koepcke then stole Plaintiff's trade secrets from his home office, drove back to Columbia Heights Community Center, and delivered it to someone at the center. Anita Koepcke later contacted Defendant Onyema through Laura Bernasconi and Dele Awoniyi to confirm delivery to Defendant Onyema.

107.    On August 12, 2014, Anita Koepcke left home at 9:35am. Anita Koepcke was at

Clemencia Torres de Maestle's house – 721 Mapleton Road, Rockville, Maryland, from 10:02am to 3:17pm. Ms. Torres de Maestle worked for Defendant WBG as a Senior Economist in Washington, DC. On information and belief, Anita Koepcke was at Ms. Torres de Maestle's house to debrief and receive further instructions.

108.    On August 15, 2014, Plaintiff contacted Safiu O. Olaniyan, head of chancery at the Nigerian Embassy in Madrid, Spain. Plaintiff informed Mr. Olaniyan about potential stalking situation involving his sister and brother-in-law.

109.    On August 16, 2014, Anita Koepcke stopped communicating with Norma Rodrigues through Google Voice number 240-424-2338. Ms. Rodrigues switched to Google Voice number 301-448-9873.

110.    On August 18, 2014, Anita Koepcke, Meike Hoffmann and Plaintiff's kids drove to Rehoboth Beach, Delaware for the day. At 9:36am, Plaintiff received an email notification from LinkedIn Security that his account has been locked because of suspicious activities that originated from outside LinkedIn.

111.    On August 25, 2014, Olufemi & Yemisi Adegbesan, Segun A. Olaniyan, Dele Awoniyi, and David Otuyelu changed their LinkedIn profiles to display only their current positions and companies. On information and belief, these individuals were instructed to conceal their activities.

112.    On September 6, 2014, Plaintiff filed an email complaint against Safiu O. Olaniyan with the Nigeria Ministry of External Affairs. Anita Koepcke then received a phone call from Verena Braunoehler at 12:02pm. Later that evening, a Mercedes-Benz or BMW sedan was parked in front of Plaintiff's house. The driver left the headlights on and sat in the car for about thirty minutes. While the Plaintiff was filming the parked car from him living room, Anita Koepcke called Plaintiff from the kitchen and said, "Kevin I found the camera. I found the

camera." On information and belief, Anita Koepcke knew why the car was parked in front of their house and wanted to distract Plaintiff from finding out.

113.    On September 7, 2014, Plaintiff saw a suspicious blue Mercedes-Benz GL parked in front of their house around 8:00pm. The white female driver left the interior and exterior lights on and sat in the car for about thirty minutes. Anita Koepcke went outside to chat with the driver. Anita Koepcke told Plaintiff that the driver came an hour too early for a church meeting. The driver left about five minutes after that encounter and never came back for the meeting. No one else showed up for the "church meeting." On information and belief, Anita Koepcke was threatened not to disclose what had happened to her to Plaintiff.

114.    On September 10, 2014, Plaintiff saw a suspicious black BMW X5 parked in front of their house. When the white male driver saw Father Dodge from St. David's church walking the church grounds, he stepped out of his SUV to pick up laptop from the trunk and pretended to be working. Anita Koepcke went outside to take his SUV picture. The driver confronted Anita Koepcke and took Plaintiff's car picture as well.

115.    On September 23, 2014, Plaintiff contacted Wangara Ado at the Nigerian Embassy in Washington, DC. Plaintiff and Mr. Ado scheduled a meeting at the Embassy for September 30th.

116.    On September 30, 2014, Plaintiff met with Wangara Ado and one other embassy staff. Plaintiff filed  formal complaint against Safiu O. Olaniyan.

117.    On November 15, 2014, Meike Hoffmann completed her *au pair* year and departed for a two-week vacation on the west coast.

118.    On December 1, 2014, Anita Koepcke drove Meike Hoffmann to Dulles airport for her flight back to Germany. Ms. Hoffmann was usually emotional while she was saying goodbye to everyone in the driveway. Ms. Hoffmann could not stop crying after Plaintiff gave her

a goodbye hug.

119.    On December 2, 2014, Anita Koepcke contacted Alexandra Haimbaugh, a Neuroscience student and an intern for the Students for Sensible Drug Policy organization. On information and belief, the frequent communication between Anita Koepcke and Ms. Haimbaugh continued through June 22, 2015. Ms. Haimbaugh later received her Doctor of Philosophy degree in Pharmacology.

120.    On December 13, 2014, Plaintiff received a telephone call from Raolat Ajenifuja, his sister that lived in Lagos, Nigeria. Ms. Ajenifuja told Plaintiff to ask Rafiu Salami, his cousin in Lagos, Nigeria, for funding assistance for his business plan. Plaintiff was surprised as to how his sister in Lagos, Nigeria found out about the business plan.

121.    On December 19, 2014, Plaintiff called Rafiu Salami to discuss the possibility of funding his business plan. Without signing a non-disclosure agreement, Mr. Salami asked the Plaintiff to send him a two-page summary of his business plan. Plaintiff got suspicious and did not send that summary. On information and belief, this was an attempt to create a false narrative that Plaintiff's trade secrets were stolen from his family in Lagos, Nigeria.

122.    On or about December 20, 2014, Plaintiff started looking around the house for missing copies of the technique and implementation process for his sector exchange-traded funds for Africa. Plaintiff was suspicious of their recently departed Meike Hoffmann and decided to review her Facebook profile. Upon reviewing Ms. Hoffmann Facebook profile, Plaintiff discovered that she recently became friend with a guy named Jonathan Rosenthal. Plaintiff also discovered that Jonathan Rosenthal worked for a competitive intelligence firm.

123.    On December 25, 2014, Plaintiff, Anita Koepcke and their kids went to Anja Robakowski's house in Georgetown for Christmas dinner. Ms. Robakowski asked Plaintiff to

send her his business plan summary so that she could help pass it along to people at Defendant

WBG. Plaintiff declined the offer and told Ms. Robakowski that Konrad Braunoehler said that

Defendant WBG does not provide early-stage funding for companies.

124.    On January 1, 2015, Anita Koepcke showed Plaintiff several Arabic WhatsApp

text messages she had received overnight on her black Samsung S2 cellphone. At 9:50am, Anita

Koepcke left home and drove to Hilmar Hamann's house – 8520 Howell Road, Bethesda,

Maryland.

125.    On January 7, 2015, while Plaintiff and Anita Koepcke were removing Christmas

ornaments from their Christmas tree around 7:30pm, Anita Koepcke directed Plaintiff's attention

to the black BMW X5 parked across the street from their living room windows. The BMW

headlights were on and when Plaintiff went outside to dispose trash, he discovered that the BMW

engine was running as well. The BMW left around 9:45pm.

126.    On January 9, 2015, Plaintiff and Anita Koepcke skyped with Meike Hoffmann at

9:00am as scheduled. Plaintiff asked Ms. Hoffmann if she knew anybody named Jonathan

Rosenthal. Ms. Hoffmann denied knowing anybody named Jonathan Rosenthal even though her

Facebook profile listed Jonathan Rosenthal as one of her friends. Towards the end of the skype

conversation, Ms. Hoffmann admitted that she met someone named John once at a playground.

Around 7:00pm, a black BMW X5 with headlights on was parked across the street from

Plaintiff's house for about forty minutes.

127.    On January 27, 2015, without Plaintiff's knowledge, Anita Koepcke contacted

Natalie A. Bennett, a partner at the law firm of McDermott Will & Emery in Washington, DC.

Ms. Bennett focused her practice on intellectual property, with emphasis on patent infringement

litigation. Ms. Bennett profile described her as being part of McDermott trial team that secured

first judgment under Defend Trade Secrets Act of 2016. Plaintiff contacted Ms. Bennett on June 26, 2017 to find out why Anita Koepcke contacted her back on January 27, 2015. Ms. Bennett said in her reply email, "I have never spoken to Anita Ajenifuja [Koepcke]. Please do not contact me in the future. I have no part in any dispute referenced in your message."

128.    On January 30, 2015, Anita Koepcke decided to go grocery shopping at Costco in Arlington, Virginia at around 12:00pm during her working hours. Plaintiff and Anita Koepcke usually go to Costco on a Saturday or Sunday. Anita Koepcke arrived back home at 1:39pm. She parked in the driveway and called Plaintiff to come down and help her unload the groceries from the car. When Plaintiff got to the front entrance, Anita Koepcke mentioned to him that there was a strange man sitting in the silver Mercedes-Benz outside. After first round of carrying groceries from the car into the house, Plaintiff came back outside with his Samsung S5 cellphone and took a picture of the Mercedes-Benz in front of their house. Plaintiff finished unloading the groceries and went back upstairs to continuing working in their daughters' bedroom. The Mercedes-Benz driver drove away and came back around 2:00pm. Plaintiff took another picture of the Mercedes-Benz from his daughters' bedroom window. Plaintiff found out around June 2015 that the Mercedes-Benz driver was Joseph A. Gurney. On information and belief, the concerted efforts to provoke Plaintiff to assault Mr. Gurney started this day. Anita Koepcke then left home again at 6:41pm to have dinner with Anja Robakowski at Asia Nine – 915 E Street NW. On information and belief, Anita Koepcke met with Ms. Robakowski to debrief her and get further instructions.

129.    On March 23, 2015, Defendant NSE and Morgan Stanley Capital International (MSCI) signed a strategic agreement to develop and commercialize co-branded family of indexes for the Nigerian equity markets.

130.    On April 13, 2015, Plaintiff sent an email to Tinuade Awe, Secretary to the Board

and Head of Legal Department of Defendant NSE.

131.    On April 17, 2015, Plaintiff met with Joshua Levy, an attorney with Cunningham & Levy to discuss his missing trade secrets and stalking situation. Around 3:00pm, Plaintiff stepped outside his house front door to pick up his two younger kids from Karate camp. Plaintiff saw the silver Mercedes-Benz from January 30th parked right behind his Honda Odyssey that was parked in the driveway. When the Mercedes-Benz driver (Joseph A. Gurney) saw Plaintiff, he drove away. Plaintiff got in his car and took a picture of the license plate of the Mercedes-Benz at the corner of Klingle Street NW and 51st Place NW. On information and belief, this was an attempt to get Plaintiff to assault Joseph A. Gurney.

132.    On May 4, 2015, Plaintiff dropped off his three kids at Key Elementary School around 8:30am. On his way back home, Plaintiff saw the silver Mercedes-Benz parked at entrance driveway into Palisades Plaza. The Mercedes-Benz rooftop was down, and Joseph A. Gurney sat in the driver seat. Plaintiff approached Mr. Gurney to find out what was going on. Upon seeing Plaintiff approaching, Mr. Gurney got out of his car and walked into Starbucks. Plaintiff walked into Starbuck, looked at Mr. Gurney in the face and went back outside. When Mr. Gurney came outside, Plaintiff asked him, "Why are you following me around the neighborhood?" Plaintiff later drove to District 2 police station to report the incident and was given the standard line, "Call us next time you see this individual in front of your house." On information and belief, this encounter with Mr. Gurney was planned on May 3, 2015.

133.    On May 13, 2015, Anita Koepcke told Plaintiff that she was stalked by Joseph A. Gurney. According to Anita Koepcke's First Amended Complaint filed with DC Superior Court, she described her stalking encounter with Mr. Gurney as follows:

"Around 8:30am, Anita [Koepcke] left home to drive to her office location downtown Washington, DC. Upon entering Loughboro Road, NW, Anita recognized Defendant Gurney driving behind her in his car. When Anita changed lanes so did Defendant Gurney. Upon travelling on Nebraska Ave., NW, towards Foxhall Road, NW, and seeing that Gurney continued in his pursuit of Anita's car, she became fearful for her safety and attempted to outrun Gurney's car. She turned right onto Foxhall Road, NW, only to see that Gurney was following her. Gurney's action created a zone of danger and caused Anita increasing stress and anxiety and resulted in her making an illegal left turn onto Klingle St, NW, to get away from her pursuer. Once on Klingle Street, NW, Anita observed in her rearview mirror that Gurney turned his head to the left to observe her route. Based on Gurney's behavior, Anita feared that he would continue his pursuit of her, and she attempted to outrun his car by making random left and right turns, thereby engaging in dangerous driving behavior caused by Gurney's actions."

134.    On May 20, 2015, Anita Koepcke told Plaintiff that Dele Awoniyi called her at work around 1:37pm. Plaintiff and Anita Koepcke stopped associating with Dele Awoniyi around October 2011. On information and belief, Anita Koepcke was instructed to fabricate this story to provoke Plaintiff into a physical fight with Dele Awoniyi.

135.    On June 10, 2015, Plaintiff and Anita Koepcke filed a DC Superior Court restraining order complaint against Joseph A. Gurney and Dele Awoniyi. This Complaint was filed in the Civil Branch of the Court.

136.    On June 15, 2015, Joseph A. Gurney filed a temporary restraining order against Plaintiff. Mr. Gurney got his temporary restraining order from the Domestic Violence Division of the Court

137.    On July 7, 2015, Vetiva Fund Managers Limited, Lagos, Nigeria announced the introduction of Vetiva Sector Series Exchange Traded Funds (ETFs). The Vetiva Sector Series

ETFs comprising the Vetiva Banking ETF, Vetiva Consumer Goods ETF, and Vetiva Industrial ETF were listed for trading on Defendant NSE's platform. On information and belief, Defendant Dangote had strong business relationship with Vetiva Fund Managers Limited.

138.    On July 16, 2015, Judge Laura Cordero of DC Superior Court's Domestic Violence Branch granted Joseph A. Gurney's motion for one-year restraining order against Plaintiff. The Order was granted because Plaintiff posted pictures of his encounters with Mr. Gurney on Google+. This restricted Plaintiff's free movement for one year.

139.    On July 17, 2015, Anita Koepcke emailed Plaintiff an article entitled "Motion to Vacate a Restraining Order Based on False Statements." The article discouraged people from trying to get judges to set aside their restraining order decisions.

140.    On July 28, 2015, Ajenifuja Investments, LLC's Investment Adviser Registration was approved by the United States Securities and Exchange Commission. Plaintiff's company was assigned CRD number: 130089 and SEC file no.: 801-99358. Ajenifuja Investments' registration was cancelled on February 12, 2019 for "failure to launch an investment adviser interactive website."

141.    On September 30, 2015, Arunma Oteh joined Defendant WBG as the Vice President and Treasurer in Washington, DC.

142.    On or about June 2016, Anita Koepcke started sleep-talking in the middle of the night screaming and saying things mostly in German. Plaintiff mentioned these sleep-talking episodes to Anita Koepcke, but she simply replied with, "I don't remember them." Plaintiff even suggested a voice recording of Anita Koepcke's sleeping habits at nights, but she said no.

143.    On July 15, 2016, Plaintiff left his office at 4:00pm, drove to Chevy Chase Recreation Center to pick up their son from summer camp. Plaintiff and his son got home at 4:45pm. Plaintiff walked into their kitchen and found a small yellow paper note on the kitchen

table. The notes say, "Kevin, I can't do this anymore. Karl is signed up for another session at CC [Chevy Chase Recreation Center] for next Monday – Anita." On information and belief, Anita Koepcke spent the weekend at Anja Robakowski's house in Georgetown to finalize the plans for Sunday, July 17th.

144.    On July 17, 2016, Plaintiff and Anita Koepcke met at Barcelona Wine and Bar – 3310 Wisconsin Avenue N.W., around 2:00pm. Anita Koepcke told Plaintiff that she wanted a third-party assessment of their situation before returning home. Anita Koepcke suggested physicians at the emergency room of Sibley Memorial hospital for that assessment. Plaintiff and Anita Koepcke left the restaurant after lunch and headed to the hospital. On information and belief, Anita Koepcke was first at Sibley Memorial hospital at 1:17pm. On information and belief, Anita Koepcke provided false narratives to the hospital staff to commit Plaintiff to the psychiatric ward of Sibley Memorial hospital.

145.    On September 29, 2016, Anita Koepcke moved out of their matrimonial home with their kids. Anita Koepcke moved into an apartment she rented on September 1st.

146.    On December 12, 2016, Plaintiff contacted Doreen Kapakasa, Defendant WBG's Vice President of Ethics and Business Conduct. Ms. Kapakasa replied Plaintiff's email and scheduled a face-to-face meeting for December 14, 2016.

147.    On December 14, 2016, Plaintiff met with Doreen Kapakasa and Simisola Adejumo at the World Bank office – 1818 H Street NW. Plaintiff filed a formal complaint and asked for investigation of the activities of several employees of Defendant WBG. Plaintiff informed Mmes. Kapakasa and Adejumo that his trade secrets were stolen with the knowledge and assistance of several employees of Defendant WBG. The meeting was tape-recorded by Ms. Kapakasa with Plaintiff's verbal permission. Plaintiff was promised an investigation but was never informed of the result of such investigation.

148.     On October 31, 2017, Haruna Jalo-Waziri resigned from the Nigerian Stock Exchange. Mr. Jalo-Waziri was the Executive Director of Business Development for Defendant NSE.

149.     On November 2, 2017, Adeolu Bajomo resigned from the Nigerian Stock Exchange. Mr. Bajomo was the second in-charge and Executive Director of Market Operation & Technology for Defendant NSE.

150.     On March 12, 2018, Plaintiff informed Arunma Oteh, through her World Bank email account, about nefarious activities of Defendants Dangote, Onyema, NSE, and WBG. Plaintiff told Ms. Oteh that these activities started while she was at the helm of the Securities and Exchange Commission of Nigeria.

151.     On October 22, 2018, Reuters announced that, "Ms. Arunma Oteh will leave the World Bank on December 1 to join St. Antony's College, Oxford University, as an academic scholar in January 2019." Ms. Oteh left her World Bank position two years before the end of her term.

152.     On January 7, 2019, World Bank President Jim Yong Kim unexpectedly announced his resignation nearly three years before his second term was set to expire.

153.     On August 13, 2019, the Wall Street Journal announced the retirement of Lynnette Kelly, Chief Executive Officer, Municipal Securities Rulemaking Board (MSRB), at the age of 59.

## CAUSES OF ACTION

## COUNT I

## (Trade Secret Misappropriation; *Civil Action under 18 U.S.C. § 1836*)

154.    Plaintiff realleges and incorporates by reference those paragraphs set forth above as if fully set forth herein.

155.    Plaintiff is the rightful owner of certain valuable trade secrets including, *inter alia*, sector exchange-traded funds for Africa.

156.    These trade secrets are related to pending launch of Plaintiff's products and services that would be used in interstate and foreign commerce.

157.    Defendants Dangote, Onyema, NSE and WBG, directly and indirectly, including through other intermediaries, orchestrated an elaborate scheme to blackmail Anita Koepcke and coerced her to steal Plaintiff's trade secrets from their Washington, DC home. Plaintiff confirmed the theft of his trade secrets on or about December 2016.

158.    On information and belief, Defendants Dangote, Onyema, NSE and WBG misappropriated Plaintiff's trade secrets. Defendants Dangote, Onyema and NSE continue to misappropriate Plaintiff's trade secrets after May 11, 2016.

159.    Plaintiff expended considerable time, effort, and expense to compile its trade secrets information. Plaintiff's trade secrets technique and implementation process created significant value for Plaintiff.

160.    Plaintiff undertook reasonable methods to maintain the secrecy of its confidential trade secret information including by (1) keeping the trade secret information in locked facilities

and in locked, password-protected, and secure computer; and (2) requiring non-disclosure agreements from non-employees exposed to the trade secrets information.

161.    These trade secrets are of substantial economic value and have conferred a competitive advantage on Plaintiff.

## COUNT II

## (Violation of DC Trade Secrets Act; *D.C.C §§ 36-401 − 36-410*)

162.    Plaintiff realleges and incorporates by reference those paragraphs set forth above as if fully set forth herein.

163.    Plaintiff is the owner of certain valuable trade secrets including, inter alia, sector exchange-traded funds for Africa, stored in a secure and access-controlled computer.

164.    These trade secrets define the technique and process for implementing sector exchange-traded funds for Africa.

## COUNT III

## (Intentional Interference with Economic Relations; )

165.    Plaintiff realleges and incorporates by reference those paragraphs set forth above as if fully set forth herein.

166.    Until recently, Plaintiff had an impeccable reputation and work records. On information and belief, Defendants Dangote, Onyema, NSE and WBG have intentionally interfered with Plaintiff's business relationships with potential investors, and business associates, and partners by spreading false, damaging and misleading information about the Plaintiff. On

information and belief, these malicious acts were perpetuated to hinder Plaintiff's ability to raise capital and fund his business plan.

## COUNT IV

### (Conspiracy to violate rights; *18 U.S.C. § 241*)

167.    Plaintiff realleges and incorporates by reference those paragraphs set forth above as if fully set forth herein.

168.    Defendants Dangote, Onyema, NSE and WBG conspired to falsely obtain temporary and one-year restraining orders against Plaintiff. Defendants Dangote, Onyema, NSE and WBG deprived Plaintiff of free movement for a period of one year. The conspiracy resulted in injury to Plaintiff.

## COUNT V

### (Intentional infliction of emotional distress;  *D.C.C. § 46*)

169.    Plaintiff realleges and incorporates by reference those paragraphs set forth above as if fully set forth herein.

170.    Defendants Dangote, Onyema, NSE and WBG conducts towards Plaintiff were extreme and outrageous. Defendants Dangote, Onyema, NSE, WBG intentional caused Plaintiff emotional distress by: (1) defaming and sabotaging Plaintiff's ability to find a decent job and make a decent living, (2) endangering the well-being and welfare of Plaintiff's children, and (3) making Anita Koepcke opioids dependent. Defendants Dangote, Onyema, NSE and WBG took these actions with reckless disregard for Plaintiff's emotional well-being. As a result of Defendants Dangote, Onyema, NSE and WBG's conducts, Plaintiff suffered legally compensable emotional distress damages.

171.    Defendants Dangote, Onyema, NSE and WBG intentional caused Plaintiff

emotional distress by: (a) directing Joseph A. Gurney to fraudulently obtain a year restraining order again Plaintiff on July 16, 2015; and (b) depriving Plaintiff's freedom of movement in his neighborhood for one year. Defendants Dangote, Onyema, NSE and WBG took these actions, with reckless disregard of Plaintiff's emotional well-being. As a result of Defendants Dangote, Onyema, NSE and WBG's conducts, Plaintiff suffered legally compensable emotional distress damages.

172.    Defendants Dangote, Onyema, NSE and WBG actions caused Plaintiff severe emotional suffering because his home was foreclosed by the mortgage company as a result of loss of income.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kevin Ajenifuja respectfully requests this Court to enter judgment against Defendants (Aliko Dangote, Oscar Onyema, Nigerian Stock Exchange, and World Bank Group) granting the following relief:

A.    The entry of judgment in favor of Plaintiff and against Defendants;

B.    A finding that Defendants have misappropriated Plaintiff's trade secrets;

C.    An award of compensatory damages against Defendants adequate to compensate Plaintiff for the misappropriation, but in no event less than $1,000,000,000;

D.    To the extent Defendants' misappropriation is found to be willful, a judgment that Plaintiff is entitled to punitive and exemplary damages in an amount to be proven at trial;

E.    To the extent that this case is found to be exceptional, an award to Plaintiff of its reasonable attorneys' fees, costs and expenses as permitted pursuant to 35 U.S.C. § 285); and

F.    Such other relief that Plaintiff is entitled to under law and any other and further relief that this Court or jury may deem just and proper.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a jury trial on all issues so triable in this action.

DATED:   November 25, 2019

Respectfully submitted,

By:   s/ Kevin A. Ajenifuja
Kevin Ajenifuja
5226 Klingle Street, N.W.
Washington, DC 20016


Plaintiff *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's First Amended Verified Complaint was served on the 25th day of November 2019, upon:

Robert M. Stern
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005-1706
rstern@orrick.com
Counsel for Aliko Dangote
(by first-class mail and email)

Oscar Onyema
401 East 34th Street, Apt. South 34C
New York, NY 10016
oonyema@nigerianstockexchange.com
(by first-class mail and email)

The Nigerian Stock Exchange
Tinuade Awe, General Counsel
2-4 Custom Street
Lagos Island, Lagos
Nigeria
tawe@nse.com.ng
(by first-class mail and email)

Matthew J. Letten
Jeffrey Green
Sidley Austin, LLP
1501 K Street N.W.
Washington, DC 20005
mletten@sidley.com
Counsel for the World Bank Group
(by first-class mail and email)

By:   s/ Kevin A. Ajenifuja
      Kevin Ajenifuja

# VERIFIED COMPLAINT and VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on November 25, 2019

Signature: _____

Print Signer's Name:   **Kevin Ajenifuja**
Plaintiff *Pro Se*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KEVIN AJENIFUJA,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **vs.** ) | **Case No. 1:19-cv-02323** |
| ) | |
| **ALIKO DANGOTE** ) | **Judge: Dabney L. Friedrich** |
| **OSCAR ONYEMA** ) | |
| **NIGERIAN STOCK EXCHANGE** ) | **VERIFICATION OF PLAINTIFF** |
| **WORLD BANK GROUP** ) | |
| ) | |
| **Defendants** ) | |

------------------------------------------------------)

DISTRICT OF COLUMBIA

SS:

COUNTY OF WASHINGTON

Kevin A. Ajenifuja, being duly sworn, deposed and says under penalties of perjury as follows:

I am the Plaintiff in the within action. I have read the within First Amended Verified Complaint and know the contents thereof and verify that same is true to my own personal knowledge, except as to matters stated to be alleged upon information and belief, and as to those matters I believe them to be true.

Dated:  November 25, 2019                    By:

                                                            Kevin A. Ajenifuja
                                                            Plaintiff *Pro Se*

Sworn to and
Subscribed before me this
25 day of November, 2019.

Notary Public