## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KEVIN AJENIFUJA,

             *Plaintiff*,

    v.

ALIKO DANGOTE, *et al.*,

             *Defendants*.

No. 19-cv-2323 (DLF)

## **MEMORANDUM OPINION**

Pro se plaintiff Kevin Ajenifuja brings this action against Nigerian entrepreneur Aliko Dangote, the Nigerian Stock Exchange and its Chief Executive Officer Oscar Onyema (collectively, NSE), and the World Bank Group, alleging that they were all part of an "elaborate scheme" to steal trade secrets that Ajenifuja had developed. *See* First Am. Verified Compl. ("Am. Compl.") ¶ 157, Dkt. 28. He asserts five counts against all four defendants based on alleged violations of both federal and District of Columbia law, *see id.* ¶¶ 154–72, and seeks monetary damages of at least $1 billion, *see id.* ¶ 172.

Before the Court are the defendants' three separate motions to dismiss: (1) the World Bank Group's Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Dkt. 33; (2) Dangote's Motion to Dismiss under Rules 12(b)(2), 12(b)(5), and 12(b)(6), Dkt. 34; and (3) NSE's Motion to Dismiss under Rules 12(b)(2), 12(b)(5), and 12(b)(6), Dkt. 47. For the reasons that follow, the Court will grant all three motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).

I.     **BACKGROUND**[1]

   A.     **Factual Allegations**

Although Ajenifuja makes a variety of factual allegations regarding a wide array of topics and individuals far beyond the named defendants, *see generally* Am. Compl. ¶¶ 9–172, the thrust of his amended complaint is that the defendants "directly and indirectly, including through other intermediaries, orchestrated an elaborate scheme to blackmail" Ajenifuja's then-wife, and "coerced her to steal [his] trade secrets from their Washington, D.C. home," *id.* ¶ 157.

This story began in March 2000, when Ajenifuja was introduced to Oscar Onyema.  *See id.* ¶ 13.  In March 2003, Ajenifuja incorporated his equity investment company and began working from home full-time "managing money for [a] few friends."  *Id.* ¶ 14.  Onyema and two other individuals—all "currently employed" by the Nigerian Stock Exchange—invested with Ajenifuja in May 2003, but liquidated their investment accounts in August 2004. *Id.* ¶ 15.  In June 2004, after ten years of "research[ing] . . . financial instrument offerings," Ajenifuja finally developed a "technique and process" for using "sector exchange-traded funds for Africa," *id.* ¶ 16, of which he is "the rightful owner," *id.* ¶ 155.  Ajenifuja eventually generated a business plan based on the technique and process he had developed, and began reaching out to venture capital firms for financing.  *See id.* ¶¶ 54, 120–21, 166.

On February 21, 2012, during a dinner meeting, Onyema "suggested… that [Ajenifuja] should develop some financial instruments for trading on the Nigerian Stock Exchange."  *Id.* ¶ 40.  Ajenifuja did not respond to this suggestion, *see id.*, but Ajenifuja alleges that Onyema and

---

[1] Because the Court in resolving a motion to dismiss must treat the plaintiff's "factual allegations as true and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Ctr. for Responsible Sci. v. Gottlieb*, 311 F. Supp. 3d 5, 8 (D.D.C. 2018) (internal quotation marks and alterations omitted), these facts are drawn solely from Ajenifuja's First Amended Verified Complaint.

the other defendants had already begun taking steps to steal the technique and process that Ajenifuja had created for these financial instruments, *see id.* ¶¶ 22, 30, 170.  This plan appears to have begun in earnest in 2010, when Ajenifuja alleges that the defendants introduced Ajenifuja's then-wife to opioids at a German-speaking Catholic Mission in Washington, D.C.  *See id.* ¶ 22. They then began blackmailing her and eventually "trained and instructed" her on how "to gradually disrupt [Ajenifuja's] life, career, and children."  *Id.*  These efforts all led up to August 4, 2014, when she received text messages from a cellphone issued by the World Bank Group and was "instructed to deliver [Ajenifuja's] trade secrets to someone at [the] Columbia Heights Community Center" in Washington, D.C.  *Id.* ¶ 106.  She then "stole [Ajenifuja's] trade secrets from his home office, drove back to [the] Columbia Heights Community Center, and delivered [them] to someone at the center."  *Id.*

A few months later, Ajenifuja began to suspect something was amiss.  On December 13, 2014, Ajenifuja received a call from his sister in Lagos, Nigeria, who told him to talk to his cousin in Lagos about "funding assistance for his business plan."  *Id.* ¶ 120.  Although unsure "how his sister. . . found out about the business plan," *id.*, Ajenifuja spoke with his cousin on December 19, 2014, *id.* ¶ 121.  During the call, his cousin expressed interest in Ajenifuja's business plan and asked Ajenifuja to send him a summary of it, but Ajenifuja "got suspicious" and believes "this was an attempt to create a false narrative that [his] trade secrets were stolen from his family in Lagos, Nigeria."  *Id.*  The next day, on December 20, 2014, Ajenifuja "started looking around the house for missing copies of the technique and implementation process for his sector exchange-traded funds for Africa" and grew even more "suspicious" of what was afoot. *Id.* ¶ 122.

A few months later, on March 23, 2015, the Nigerian Stock Exchange "signed a strategic agreement" with Morgan Stanley Capital International to "develop and commercialize [a] co-branded family of indexes for the Nigerian equity markets." *Id.* ¶ 129.  Ajenifuja emailed the head of the Nigerian Stock Exchange's legal department on April 13, 2015, *id.* ¶ 130, and met with an attorney on April 17, 2015, to discuss, among other things, "his missing trade secrets," *id.* ¶ 131.

### B.      Procedural History

Ajenifuja filed this lawsuit on August 2, 2019.  *See* Dkt. 1.  In his amended complaint, Ajenifuja asserts five counts against all four defendants.  In Count I, Am. Compl. ¶¶ 154–61, Ajenifuja presses a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836.  In Count II, Am. Compl. ¶¶ 162–64, he asserts a claim under the District of Columbia's Uniform Trade Secrets Act, D.C. Code § 36–401, *et seq*.  In Count III, Am. Compl. ¶¶ 165–66, he advances an intentional interference with economic relations claim.  In Count IV, *id.* ¶¶ 167–68, Ajenifuja claims the defendants conspired to violate his rights in violation of 18 U.S.C. § 241.  And in Count V, Ajenifuja asserts a claim of intentional infliction of emotional distress. *See* Am. Compl. ¶¶ 169–72.

The defendants have filed three separate motions to dismiss asserting various challenges to Ajenifuja's amended complaint.  The World Bank Group moves to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that it is immune from suit.  Dkt. 33.  Dangote and NSE both move to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and for improper service under Rule 12(b)(5).  Dkts. 34, 47.  And all of the defendants move to dismiss pursuant to Rule 12(b)(6) on the grounds that Ajenifuja lacks a private right of action

under 18 U.S.C. § 241 for his conspiracy claim, his remaining claims are time-barred, and Ajenifuja has failed to plausibly allege the elements of his claims.  *See* Dkts. 33, 34, 47.

## II.    LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Federal law empowers federal district courts to hear only certain kinds of cases, and it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 377 (1994).  When deciding a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions."  *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citation omitted).  But the Court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" to "assure itself of its own subject matter jurisdiction."  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted).  A court that lacks jurisdiction must dismiss the action.  Fed. R. Civ. P. 12(b)(1); *id.* 12(h)(3).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff's well-pleaded factual allegations are "entitled to [an] assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  And the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from

the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal

quotation marks omitted).

## III.    ANALYSIS

 "[J]urisdictional questions ordinarily must precede merits determinations in dispositional

order." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007).

This is because "[j]urisdiction is power to declare the law, and when it ceases to exist, the only

function remaining to the Court is that of announcing the fact and dismissing the cause." *Steel*

*Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (internal quotation marks omitted).

Thus, "[r]ather than assuming (without deciding) jurisdiction and going on to address the merits

. . . a court must first establish as an antecedent matter that it has jurisdiction." *Kaplan v. Cent.*

*Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018) (internal quotation

marks omitted).  Yet, the Court "has leeway to choose among threshold grounds for denying

audience to a case on the merits," *Sinochem*, 549 U.S. at 431 (internal quotation marks omitted),

and "may address certain nonjurisdictional, threshold issues so long as those issues can occasion

a dismissal short of reaching the merits."  *Matar v. Transp. Sec. Admin.*, 910 F.3d 538, 541 (D.C.

Cir. 2018) (internal quotation marks omitted and alterations adopted).

The timeliness of Ajenifuja's trade secrets claims is one such nonjurisdictional threshold

issue because dismissal of those claims as time-barred under Rule 12(b)(6) "does not involve any

consideration of the merits of [Ajenifuja's] claims."  *See id.*; *see also Elec. Privacy Info. Ctr. v.*

*Fed. Aviation Admin.*, 821 F.3d 39, 41 n.2 (D.C. Cir. 2016) (noting an "'arduous inquiry'" into

standing could be avoided because timeliness was an "alternative and 'straightforward' threshold

ground for dismissal") (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587–88

(1999)); *Olson v. United States*, 953 F. Supp. 2d 223, 229 (D.D.C. 2013) (dismissing claims on

statute of limitations grounds before turning to jurisdictional challenges).  Accordingly, the Court will begin by assessing whether Ajenifuja's first two counts are time-barred.  And because the relevant statutes of limitations "clearly dictate dismissal" of Ajenifuja's trade secrets claims, the Court will dismiss these claims.  *See id*.  In addition, because there is no private right of action for Ajenifuja to enforce the criminal statute he relies upon for his conspiracy claim, the Court will also dismiss this claim.  Finally, the Court will decline to exercise supplemental jurisdiction over Ajenifuja's remaining state-law claims.

> **A.      Counts I, II, and IV**

The defendants all assert that Ajenifuja's claims in Counts I and II under the Defend Trade Secrets Act and the District of Columbia's Uniform Trade Secrets Act are time-barred. *See* World Bank Group Mem. in Supp. of Mot. to Dismiss at 12–13, Dkt. 33-1; Dangote Mem. in Supp. of Mot. to Dismiss at 18–19, 20, Dkt. 34; NSE Mem. in Supp. of Mot. to Dismiss at 10–11, Dkt. 47-1.  "A party may raise a statute of limitations argument in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) 'when the facts that give rise to the defense are clear from the face of the [complaint].'"  *Lloyd v. Ingenuity Prep Pub. Charter Sch.*, 368 F. Supp. 3d 25, 26 (D.D.C. 2019) (quoting *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998)).

An action brought under the Defend Trade Secrets Act "may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered," and "a continuing misappropriation constitutes a single claim of misappropriation."  18 U.S.C. § 1836(d).  The same is true for claims brought under the District of Columbia's Uniform Trade Secrets Act.  *See* D.C. Code § 36-406.

Accepting the claims in Ajenifuja's complaint as true, as the Court must, Ajenifuja's trade secrets were stolen from his home office by his then-wife on August 4, 2014.  Am. Compl. ¶ 106.  Ajenifuja became suspicious after a series of phone calls with relatives in December 2014, *see id.* ¶¶ 120–21, and "started looking around the house for missing copies" of his trade secrets on December 20, 2014, *id*. ¶ 122.  On March 23, 2015, a "strategic agreement" was signed by the Nigerian Stock Exchange and Morgan Stanley Capital International that allegedly implemented part of Ajenifuja's trade secrets.  *See id.* ¶ 129; *see also* Pl.'s Opp'n to Dangote Mot. at 4, Dkt. 40.  And within weeks of this agreement being signed, Ajenifuja contacted the legal department of the Nigerian Stock Exchange, Am. Compl. ¶ 130, and sought legal counsel about "the missing trade secrets," *see id.* ¶ 131.

Thus, Ajenifuja was aware that copies of his trade secrets were missing on December 20, 2014.  Given that Ajenifuja had kept these trade secrets "in locked facilities and in [a] locked, password-protected, and secure computer," *id*. ¶ 160, Ajenifuja either knew or should have known at that time that his trade secrets had been misappropriated, *see Kleiman v. Wright*, No. 18-cv-80176, 2018 WL 6812914, at *14 (S.D. Fla. 2018) (dismissing trade secrets claims where plaintiffs "should have discovered the Defendant's misapplication of the trade secrets through the exercise of reasonable diligence.").  Moreover, he certainly was—or should have been— aware of the misappropriation by the time he met with an attorney in April 2015 to discuss the "missing trade secrets."  Am. Compl. ¶ 131.  Accordingly, it is clear from the face of Ajenifuja's complaint that the filing of this action over four years later, in August 2019, *see* Dkt. 1, renders his trade secrets claims time-barred.

Ajenifuja argues that he did not confirm the theft until December 2016.  *See* Pl.'s Opp'n to Dangote Mot. at 7.  But the statutes of limitations for his trade secrets claims began running

when the misappropriation was "discovered or by the exercise of reasonable diligence should have been discovered," *see* 18 U.S.C. § 1836(d); D.C. Code § 36-406, not when Ajenifuja confirmed the theft with certainty.  And the fact that the misappropriation was allegedly an ongoing one, *see* Am. Compl. ¶ 158, makes no difference because, under both acts, "a continuing misappropriation constitutes a single claim."  *See* 18 U.S.C. § 1836(d); D.C. Code § 36-406.

In an attempt to keep his trade secrets claims alive, Ajenifuja invokes the equitable tolling doctrine.  *See* Pl.'s Opp'n to World Bank Mot. at 18, Dkt. 39.  Equitable tolling is an extraordinary remedy that courts apply sparingly.  *See Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006).  Generally, "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Mizell v. SunTrust Bank*, 26 F. Supp. 3d 80, 87 (D.D.C. 2014) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  Ajenifuja argues in his brief that the statute of limitations for each of his trade secrets claims should be tolled on the grounds that he was unaware of his cause of action because until September 2016 he lacked the "vital information" that his ex-wife "was an intelligence agent."  *See* Pl.'s Opp'n to World Bank Mot. at 18.  But his complaint contains no such allegation,[2] and even if it did, that allegation alone would not be an "extraordinary and carefully circumscribed circumstance[]" justifying equitable tolling.  *Norman*, 467 F.3d at 776.  Given that Ajenifuja discovered that his trade secrets were missing in December 2014, Am. Compl. ¶ 121, and sought legal counsel on the

---

[2] Ajenifuja does make several allegations in his amended complaint that individuals attempted to conceal things from him. *See, e.g.*, Am. Compl. ¶ 41 (Ajenifuja's car was damaged in March 2012 in an attempt to keep him from finding out about his wife's opioid addiction).  But these allegations do not appear to be relevant to Ajenifuja's trade secrets claims, and they all precede Ajenifuja's eventual discovery in December 2014 that his trade secrets were missing.  *See id.* ¶¶ 120–22.

issue in April 2015, *id.* ¶ 131, it is unclear how being unaware of his ex-wife's alleged agent status prevented him from pursuing his trade secrets claims.  *See Lattisaw v. District of Columbia*, 118 F. Supp. 3d 142, 158 (D.D.C. 2015) (rejecting plaintiff's equitable tolling argument and dismissing claim as time-barred), *aff'd*, 672 F. App'x 22 (D.C. Cir. 2016) (per curiam).  Because Counts I and II are time-barred under the Trade Secrets Act and the District of Columbia's Uniform Trade Secrets Act, the Court will dismiss both counts.

Next, in Count IV, Ajenifuja purports to bring a claim against the defendants for their violation of 18 U.S.C. § 241.  Am. Compl. ¶ 167.  But this criminal statute does not "convey a private right of action."  *Keyter v. Bush*, No. 04-cv-5324, 2005 WL 375623, at *1 (D.C. Cir. Feb. 16, 2005) (per curiam); *see Ivey v. National Treasury Employees Union*, No. 05-cv-1147, 2007 WL 915229, at *5 (D.D.C. 2007).  Because "there is no private right of action to enforce provisions of criminal law, and only a federal prosecutor may determine whether to pursue a criminal action," *id.*, the Court will dismiss Count IV pursuant to Rule 12(b)(6).  *See Rockefeller v. U.S. Court of Appeals for the Tenth Circuit*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003).

### B.     Jurisdiction Over Remaining Claims

Finally, the Court must assess its jurisdiction over Ajenifuja's remaining state-law claims in Counts III (intentional interference with contractual relations) and V (intentional infliction of emotional distress) to "ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001); *see James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (describing the "affirmative obligation" of courts to consider their own jurisdiction).  Here, the Court lacks diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  *See Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (describing the "well-established rule that diversity of

citizenship is assessed at the time the action is filed").  And these claims do not arise under federal law.  *See* 28 U.S.C. § 1331.

Ajenifuja nonetheless asserts that his state-law claims are "so related" to his federal claims "that they form part of the same case or controversy."  Am. Compl. ¶ 7; *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  When a court dismisses all federal claims in a suit, however, it has the discretion under 28 U.S.C. § 1367(a) to exercise—or decline to exercise—supplemental jurisdiction over any remaining state-law claims.  *See id.* at 726 (describing supplemental jurisdiction as a "doctrine of discretion" and not of "right"); *see also* 28 U.S.C. § 1367(c)(3); *Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 60 (D.D.C. 2011) (dismissing all federal claims and declining to exercise supplemental jurisdiction over remaining state-law claims).  In exercising this discretion, courts consider "judicial economy, convenience and fairness to litigants."  *United Mine Workers*, 383 U.S. at 726.  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1267 (D.C. Cir. 1995) (applying *Carnegie-Mellon Univ*. after the passage of the current version of § 1367(d)).

The relevant factors weigh against retaining Ajenifuja's remaining state-law claims now that all of the federal claims have been dismissed.  To start, this "case has not progressed beyond defendants' first motion, and the Court has not developed any familiarity with [Ajenifuja]'s state-law claims."  *Deppner v. Spectrum Health Care Res., Inc.*, 325 F. Supp. 3d 176, 191 (D.D.C. 2018).  Moreover, Ajenifuja "will not be prejudiced in any way by dismissal," *id.*, because 28 U.S.C. § 1367(d) not only provides for a thirty-day grace period for refiling in state

court after dismissal but also stops the clock on any otherwise-applicable limitations period during the pendency of the federal suit, *see Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018).  Because the Court declines to exercise supplemental jurisdiction over Ajenifuja's state-law claims, it will dismiss Counts III and V for lack of subject-matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss are granted. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

September 2, 2020